Argued and submitted November 6, 2015, affirmed June 14, 2017

LAYCELLE TORNEE WHITE,
*Petitioner-Appellant,*
*v.*

Jeff PREMO,
Superintendent,
Oregon State Penitentiary,
*Defendant-Respondent.*

Marion County Circuit Court
11C24240; A154420

399 P3d 1034

Ryan T. O'Connor argued the cause for appellant. With him on the briefs was O'Connor Weber LLP.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Garrett, Judge.*

---

* Garrett, J., *vice* Flynn, J. pro tempore.

**DUNCAN, P. J.**

Petitioner was convicted of aggravated murder and murder for acts that he committed with his twin brother in 1993, when they were 15. In the petition for post-conviction relief that gives rise to this appeal, petitioner alleged that his 800-month sentence for murder was unconstitutional because it was vertically disproportionate to his sentence for aggravated murder and because it was a de facto life sentence for a juvenile; he further alleged that his trial and previous post-conviction counsel were constitutionally inadequate for failing to raise those issues. The post-conviction court granted summary judgment to the state,[1] ruling that the asserted grounds for relief were untimely and successive and did not fall within the escape clauses of ORS 138.510(3) and ORS 138.550(3).[2] Petitioner now appeals the resulting judgment.

As we will explain, the issues raised by petitioner's appeal have been conclusively resolved by three other cases involving petitioners who were convicted of murder or aggravated murder as juveniles, including, most recently, a decision concerning post-conviction claims by petitioner's twin brother. *See White v. Premo*, 285 Or App 570, 397 P3d 504 (2017) (*Lydell White*); *Cunio v. Premo*, 284 Or App 698, 395 P3d 25 (2017); *Kinkel v. Persson*, 276 Or App 427, 367 P3d 956, *rev allowed*, 359 Or 525 (2016). In light of those cases, we affirm the judgment of the post-conviction court.

## I. BACKGROUND

Petitioner and his twin brother, Lydell White, were 15 when they murdered an elderly couple in 1993. Petitioner was waived into adult court and, on stipulated facts, was

---

[1] To avoid confusion, we refer to the defendant superintendent in this case as "the state."

[2] ORS 138.510(3) provides that a petition pursuant to ORS 138.510 to 138.680 must be filed within two years of the date the direct appeal is final "unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition." ORS 138.550(3), in turn, requires that "[a]ll grounds for relief claimed by petitioner in a petition pursuant to ORS 138.510 to 138.680 must be asserted in the original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."

convicted of one count of aggravated murder and one count of murder. He received an indeterminate life sentence on the aggravated murder conviction and an 800-month concurrent sentence on the murder conviction.

Petitioner filed a direct appeal in which he argued that the 800-month sentence was unlawful. His opening brief on appeal presented the following question: "Was the sentence of 800 months imposed upon [petitioner] for his conviction for murder excessive, and did it constitute cruel and unusual punishment?"[3] In the "Summary of Argument" section of his brief, petitioner stated:

"The sentence of 800 months imposed upon [petitioner] for murder was excessive and constitutes cruel and unusual punishment. First, this sentence is disproportionate, in violation of Article I, Section 16 of the Oregon Constitution. Although permitted to do so by the statute existing at the time, the court violated [petitioner's] constitutional right to be free of excessive punishment by imposing 800 months, which is more than twice the presumptive sentence [petitioner] should have received. Second, because [petitioner] was a juvenile, the sentence of 800 months operates as a mandatory minimum sentence, in fact if not in name. This was impermissible, and [petitioner's] sentence should be vacated."

Although that summary did not invoke the federal constitution, the argument in support of his sole assignment of error referred to the Eighth Amendment to the United States Constitution:

"* * * The court apparently had [statutory] authority to impose 800 months. However, [petitioner] challenges the sentence of 800 months based on the proportionality clause of Article I, section 16 of the Oregon Constitution. In addition, the sentence was excessive, cruel and unusual under the Eighth Amendment to the United States Constitution."

---

[3] We take judicial notice of the content of the briefing in this court on petitioner's direct appeal. *See, e.g., Jones v. State of Oregon,* 246 Or App 253, 256 n 3, 265 P3d 75, *rev den,* 351 Or 403 (2011) ("Our description, as necessary narrative, of the parties' contentions on direct appeal is predicated on our taking judicial notice, pursuant to OEC 201(b), of the content—but not the truth of that content—of the parties' appellate briefs." (Emphasis omitted.)).

After developing his proportionality argument, petitioner further contended:

"There can be no doubt that the crimes in this case were violent and offensive to society. However, [petitioner] was only 15 at the time the crimes were committed and 17 at the time of sentencing. The philosophy of the juvenile criminal code should be one of rehabilitation and not vindictive justice. The sentence of 800 months imposed upon [petitioner] was excessive, and for the reasons given, constituted cruel and unusual punishment."

The state, in its response, asserted that petitioner was "rely[ing] upon Article I, section 16, of the Oregon Constitution, which requires that 'all penalties shall be proportioned to the offense' and prohibits the infliction of 'cruel and unusual punishments,' and upon the comparable Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution." The state responded to the merits of the arguments, but its threshold contention was that the issues were not preserved because petitioner's arguments in the trial court had not cited Article I, section 16, the Eighth Amendment, or cases decided under those provisions, nor had petitioner's trial counsel "sa[id] or suggest[ed] 'cruel and unusual punishment,' and nowhere [did trial] counsel suggest that the sentence is disproportionate to the offense." (Boldface omitted.) We affirmed without opinion, and the Supreme Court denied review. *State v. White*, 139 Or App 136, 911 P2d 1287, *rev den*, 323 Or 691 (1996).

Petitioner filed a petition for post-conviction relief in 1996, which the court denied. This court again affirmed without opinion, and the Supreme Court denied review. *White v. Thompson*, 157 Or App 723, 972 P2d 1231 (1998), *rev den*, 328 Or 293 (1999). Thereafter, petitioner sought habeas corpus relief in federal district court, arguing that his post-conviction counsel had rendered constitutionally ineffective assistance by, among other things, failing to adequately object to the trial court's 800-month sentence on the ground that it exceeded state constitutional limitations on sentences for a juvenile. In 2001, the district court dismissed the petition on the ground that petitioner "failed to fairly present" that claim "to the Oregon Court of Appeals or the Oregon Supreme Court when [petitioner] appealed

the denial of his motion for post-conviction relief." That is, the district court ruled that petitioner had procedurally defaulted on that claim by not raising it in state post-conviction proceedings.

In the years that followed, petitioner also litigated in state and federal court with regard to his life sentence for aggravated murder—in particular, his parole eligibility on that sentence. At the time that petitioner and his twin brother were sentenced for their crimes, the Board of Parole and Post-Prison Supervision did not have rules in place to address parole for juvenile aggravated murders. *See generally Engweiler v. Board of Parole*, 343 Or 536, 175 P3d 408 (2007) (discussing the complicated history of the law as it applied to juveniles who were convicted of aggravated murder). The board eventually adopted so-called "juvenile aggravated murderer (JAM) rules" and, in 1999, established a prison term of "life" with a parole eligibility hearing after 40 years for petitioner and his brother. In 2010 and 2011, the federal district court and the Oregon Supreme Court invalidated those JAM rules in different respects. *See White v. Belleque*, Nos 02-0630-TC, 02-1453-TC, 2010 WL 5625800 (D Or Oct 21, 2010); *State ex rel Engweiler v. Felton*, 350 Or 592, 260 P3d 448 (2011).

Then, in 2012, two events shaped the filing of the amended petition that is the subject of this appeal. One, the board held a hearing for petitioner and his brother in the wake of the federal and state decisions invalidating the JAM rules, and it set prison terms of 288 months on their aggravated murder convictions. And two, the United States Supreme Court decided *Miller v. Alabama*, 567 US 460, 132 S Ct 2455, 183 L Ed 2d 407 (2012), in which it held that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without the possibility of parole for juvenile offenders. *Miller* had drawn on the reasoning in *Graham v. Florida*, 560 US 48, 82, 130 S Ct 2011, 176 L Ed 2d 825 (2010), in which the Court held that the Eighth Amendment prohibits the imposition of a life sentence without parole on a juvenile offender for crimes other than homicide.

Petitioner filed his amended petition after *Miller*, alleging various claims based on the lawfulness of his

sentences.[4] As relevant to his appeal, petitioner's amended petition alleged a claim that he was denied due process because his 800-month sentence was vertically disproportionate, in that it was longer than the 288-month prison term he would serve for aggravated murder, and was unconstitutional because it amounted to a de facto life sentence for a juvenile; a claim that trial counsel was inadequate by, among other things, failing to object to the 800-month sentence as vertically disproportionate; and claims that previous post-conviction counsel, including appellate post-conviction counsel, were inadequate in failing to raise and preserve claims regarding the proportionality of his 800-month sentence.

In response, the state moved for summary judgment, arguing, as a threshold matter, that all the claims were untimely and successive under ORS 138.510(3) and ORS 138.550(3), respectively. Petitioner acknowledged that his amended petition was successive because he had previously initiated post-conviction proceedings,[5] but he argued that the claims were not barred because the grounds for relief in his amended petition could not reasonably have been asserted in a previous or timely petition, thereby bringing them within the escape clauses of those procedural bars. The post-conviction court agreed with the state and granted the motion for summary judgment, and petitioner appealed the ensuing judgment.

## II.  ANALYSIS

On appeal, petitioner advances four assignments of error, which are directed at the court's grant of summary judgment on claims based on (1) the sentencing court's errors; (2) trial counsel's inadequacy; (3) post-conviction trial counsel's inadequacy; and (4) post-conviction appellate counsel's inadequacy. We reject each of those assignments for the reasons that follow.

---

[4] Petitioner had filed a *pro se* petition in December 2011, prior to *Miller.* After counsel was appointed to represent him, he filed an amended petition in February 2013.

[5] In addition to the post-conviction proceedings commenced in 1996, petitioner had filed an unsuccessful petition for post-conviction relief in 2005 based on the United States Supreme Court's decision in *Blakely v. Washington,* 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004).

A.  *First Assignment of Error: Claim Based on Errors by Sentencing Court*

In his first assignment, petitioner argues that the court erred "when it granted the state's motion for summary judgment on petitioner's claim for relief that is based on the sentencing court's imposition of an unconstitutional sentence." We understand the assignment to address two grounds on which the 800-month sentence for murder was unconstitutional: (1) that it was vertically disproportionate to the sentence on the more serious crime of aggravated murder and (2) that it was a de facto life sentence for a juvenile. Each raises distinct issues related to the successive nature of the grounds for relief in the petition.

1.  *Vertical proportionality*

Petitioner's vertical proportionality argument is summarized in his amended petition:

> "The trial court failed to insure that Petitioner was sentenced to a fair [and] impartial sentence that was proportionate to each count. The court's eight hundred (800) month enhanced sentence on the murder count is clearly disproportionate to the sentence that Petitioner will serve on the more serious charge of Aggravated Murder. The Oregon Board of Parole determined that Petitioner would serve a minimum of two hundred eighty eight (288) months for the Aggravated Murder count, or twenty-four (24) years. The eight hundred months sentence is almost sixty seven years and is clearly disproportionate to the crime with the greater severity. This sentence also constitutes cruel and unusual punishment."

According to petitioner, that proportionality issue—*i.e.*, that he will serve an 800-month sentence for murder but a minimum of 288 months for the more serious crime—requires a comparison that did not exist or was not reasonably available to petitioner until October 2012, when the board of parole established the length of time that petitioner would serve on his indeterminate life sentence for aggravated murder.

We recently addressed the same issue in *Lydell White*, 285 Or App 570, which involved petitioner's twin brother. As described earlier, petitioner and his brother, Lydell White, each received the same sentences for the

murder and aggravated murder they committed together. They also later received the same minimum prison term of 288 months for aggravated murder as a result of a parole board determination in October 2012. Thereafter, Lydell White, like petitioner, filed a successive petition for post-conviction relief and, on appeal, argued that he could not reasonably have raised a vertical proportionality challenge until after the parole board's 2012 order:

> "[P]etitioner also claims that the 800-month sentence for murder is vertically disproportionate to the sentence for aggravated murder, and asserts that he could not have raised that challenge before the parole board established a release date on his aggravated murder sentence in 2012, and, therefore, it falls within the escape clauses in ORS 138.510 and ORS 138.550."

*Lydell White*, 285 Or App at 580. We rejected that argument, explaining that the parole board's decision had not changed Lydell White's sentence:

> "* * * As petitioner notes, his vertical proportionality challenge 'involves a comparison between the sentence for murder and the sentence for aggravated murder.' However, his sentence on each conviction was set forth in the 1995 judgment in this case and those sentences have not changed in the years since they were imposed. Thus, a challenge based on the premise that the 800-month sentence for murder is vertically disproportionate to an indeterminate life sentence for aggravated murder could have been raised at that time. *See Cunio*, 284 Or App at 706 n 7. Furthermore, to the extent that his challenge is based on the board's decision, as the state correctly notes, petitioner cannot challenge the board's decision in post-conviction relief. *See id.*; *see also* ORS 138.530(1); ORS 138.540(2). Accordingly, we reject petitioner's assertion that his vertical disproportionality challenge to his sentences could not have been raised earlier."

*Id.* at 580-81 (footnotes omitted).

That reasoning applies with equal force in this case and forecloses petitioner's vertical proportionality argument.

### 2. *De facto life sentence*

Under his first assignment of error, petitioner also contends that his sentence violates Article I, section 16, and the Eighth Amendment, because it is a de facto life

sentence that was imposed on him as a juvenile. The principles underlying that argument, petitioner argues, derive from the Supreme Court's decisions in *Graham* and *Miller*, which were "groundbreaking"; thus, "[p]etitioner could not have been expected to challenge his sentence based on the principle articulated in *Miller* during sentencing, on direct appeal, or in his prior post-conviction proceedings." Our decision in *Kinkel* forecloses that argument.

As described above, petitioner raised constitutional challenges to the length of his sentence on direct appeal based on the fact that he was a juvenile at the time of the crimes. Citing Article I, section 16, petitioner argued that, "because [he] was a juvenile, the sentence of 800 months operates as a mandatory minimum sentence, in fact if not in name." And, after citing both Article I, section 16, and the Eighth Amendment, petitioner argued that he "was only 15 at the time the crimes were committed and 17 at the time of sentencing. The philosophy of the juvenile criminal code should be one of rehabilitation and not vindictive justice. The sentence of 800 months imposed upon [petitioner] was excessive, and for the reasons given, constituted cruel and unusual punishment."

In *Kinkel*, we explained that "the fact that, in an earlier appeal or petition for post-conviction relief, a petitioner unsuccessfully raised a ground for relief that would have been successful under later case law does not bring a claim for relief within the escape clauses of ORS 138.550(2) and (3)."[6] 276 Or App at 442. "On the contrary, the fact that a petitioner earlier raised the same ground for relief demonstrates that that ground for relief *could* reasonably have

---

[6] ORS 138.550(2) provides:

"When the petitioner sought and obtained direct appellate review of the conviction and sentence of the petitioner, no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. If petitioner was not represented by counsel in the direct appellate review proceeding, due to lack of funds to retain such counsel and the failure of the court to appoint counsel for that proceeding, any ground for relief under ORS 138.510 to 138.680 which was not specifically decided by the appellate court may be asserted in the first petition for relief under ORS 138.510 to 138.680, unless otherwise provided in this section."

been raised on appeal or in a first petition for post-conviction relief." *Id.* (emphasis in original). That is, ORS 138.550(2) and (3) prevent petitioners from bringing successive petitions for post-conviction relief on grounds that could reasonably have been raised on direct appeal or in an earlier post-conviction petition, even if the grounds would not have been successful at the time. *Id.* And, "where a petitioner did, in fact, earlier raise a ground—even unsuccessfully—ORS 138.550(2) and (3) bar that ground for relief from being raised in a later post-conviction petition." *Id.* at 444; *see also id.* at 443 ("ORS 138.550(2) and (3) must be read together and, so read, express the legislature's intent that when a petitioner has appealed and files a petition for post-conviction relief, the petitioner must raise all grounds that could reasonably be asserted.").

Here, as in *Kinkel*, petitioner's earlier unsuccessful challenges to his 800-month sentence on the ground that it was disproportionate and cruel and unusual punishment to impose on a juvenile, bar that ground from being raised in a later post-conviction petition under ORS 138.550.[7] *Accord Lydell White*, 285 Or App at 579-80 (reaching the same conclusion where the petitioner's earlier post-conviction petition had asserted that "the 1995 judgment violated 'the prohibition against cruel and usual punishment secured by the Eighth Amendment [to] the United States Constitution,'" and "asserted that the 'life' and '836 month' sentences imposed on him, 'a remanded juvenile,' violated the 'Eighth Amendment protection against Cruel and Unusual punishment'").

B. *Second Assignment of Error: Inadequate Assistance of Trial Counsel*

Petitioner's second assignment of error asserts that "[t]he post-conviction court erred when it granted the state's motion for summary judgment on petitioner's claim for relief

---

[7] Petitioner points out that, in *Montgomery v. Louisiana*, ___ US ___, 136 S Ct 718, 193 L Ed 2d 599 (2016), the Supreme Court held that the rule announced in *Miller* is retroactive for purposes of collateral review. However, as we explained in *Kinkel*, *Cunio*, and then *Lydell White*, we do not interpret *Montgomery* to preclude operation of ORS 138.510(3) or ORS 138.550(2) and (3). *Lydell White*, 285 Or App at 579 n 9 (citing *Cunio*, 284 Or App at 706 n 6, and *Kinkel*, 276 Or App at 438 n 6).

based on ineffective assistance of trial counsel." However, petitioner combines his argument under that assignment with his argument concerning his third and fourth assignments of error, which address previous *post-conviction* counsel. Petitioner does not explain why, apart from post-conviction counsels' alleged errors, he could not reasonably have brought his claims in an earlier petition, nor does he develop any independent argument as to why the post-conviction court erred in granting summary judgment on his claims regarding trial counsel's inadequacies. In the absence of a distinct and developed argument on those issues, we understand his second assignment to depend on our resolution of his third and fourth assignments, and we do not address it separately. *See Lydell White*, 285 Or App at 574 n 4 (similarly concluding that, where the petitioner did not specifically discuss claims of trial counsel's inadequacy, or articulate any reason that those claims could not have been raised in his original post-conviction petition, he had not challenged the post-conviction court's dismissal of those claims).

C. *Third and Fourth Assignments: Inadequacy of Post-Conviction Counsel*

In his final two assignments, petitioner argues that the post-conviction court erred in granting summary judgment on his claims that his previous post-conviction counsel, both at the trial level and on appeal, provided inadequate assistance in failing to raise various issues regarding the constitutionality of his sentence and trial counsel's performance. He argues that, based on the United States Supreme Court's decision in *Martinez v. Ryan*, 566 US 1, 132 S Ct 1309, 182 L Ed 2d 272 (2012), he is permitted to bring a successive petition based on grounds that should have been raised by previous post-conviction counsel—that is, that his post-conviction counsels' alleged ineffectiveness provides a basis for him to invoke the escape clauses. Our recent case law forecloses that contention. *See Lydell White*, 285 Or App at 581-82 (rejecting an identical argument based on *Martinez* and holding that the "petitioner's contention that he can satisfy the escape clauses based on his claim that his former post-conviction counsel was inadequate is unavailing" (citing *Cunningham v. Premo*, 278 Or App 106, 124, 373

P3d 1167, *rev den*, 360 Or 422; 360 Or 751 (2016), *cert den*, 137 S Ct 1332 (2017)).[8]

Affirmed.

---

[8] To the extent that petitioner is arguing that inadequacy of post-conviction counsel supplies an independent basis for relief, our case law forecloses that contention as well. *See Hayward v. Premo*, 281 Or App 113, 119, 383 P3d 437, *rev den*, 360 Or 751 (2016) (explaining that *Cunningham* forecloses arguments based on escape clause or independent relief as a result of inadequacy of post-conviction counsel).